UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY ANDUJAR O/B/O D.A.,
a minor,

Case No. 18-12436

            Plaintiff,

Nancy G. Edmunds

v.

United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,

Stephanie Dawkins Davis
United States Magistrate Judge

            Defendant.

_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 13)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On August 6, 2018, plaintiff, who is the father of D.A., a minor child, filed

the instant suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Nancy G. Edmunds referred this matter to the

undersigned for the purpose of reviewing the Commissioner's unfavorable decision

denying plaintiff's claim for supplemental security income childhood disability

benefits.  (Dkt. 3).  This matter is currently before the Court on cross-motions for

summary judgment.  (Dkt. 12, 13).

B.     Administrative Proceedings

Plaintiff filed an application for supplemental security income childhood

disability benefits on January 28, 2016, on behalf of his minor child, D.A., alleging

disability beginning on July 8, 2011.  (Tr. 15).[1]  The claim was initially

disapproved by the Commissioner on June 10, 2016.  Plaintiff requested a hearing

and on May 25, 2017, plaintiff and D.A. appeared, with counsel, before

Administrative Law Judge ("ALJ") Therese Tobin, who considered the case *de

novo*.  (Tr. 31-52).  In a decision dated November 7, 2017, the ALJ found that D.A.

was not disabled.  (Tr. 12-27).  Plaintiff requested a review of this decision, and the

ALJ's decision became the final decision of the Commissioner when the Appeals

Council, on June 11, 2018, denied plaintiff's request for review.  (Tr. 1-6); *Wilson

v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 8.  All references to
the same are identified as "Tr."

2

## II.    ALJ FINDINGS

The claimant, D.A., born July 8, 2011, was a preschooler on November 28, 2016, the date the application was filed, and was a school-age child on the date of the decision.  (Tr. 18).  The claim for disability on D.A.'s behalf is based on an intellectual disorder, a speech and language delay, autism-spectrum disorder, and asthma.  (Tr. 18).

At Step I of the three-step sequential evaluation process, the ALJ found that D.A. has never engaged in substantial gainful activity.  (Tr. 18).  At Step II, the ALJ found that D.A. has an intellectual disorder, a speech and language delay, autism-spectrum disorder, and asthma, which she found to be severe impairments that caused more than minimal functional limitations.  *Id.*  At Step III, the ALJ found that D.A. did not have an impairment or combination of impairments that met or medically equaled the Listings or that functionally equaled the Listings.  (Tr. 18-27).  In denying the claim, the ALJ found that D.A. did not meet or equal Listing 112.05 (Intellectual Disability) or 112.10 (Autism Spectrum Disorder).  (Tr. 18).  The ALJ went on to evaluate D.A.'s degree of limitation in each of the six functional equivalence domains and concluded that he had a "marked" limitation in the domain of acquiring or using information, but no marked or extreme limitations in the other five broad functional domains and thus did not functionally equal a listed impairment.  (Tr. 19-27).  The ALJ thus determined that

3

D.A. was not disabled from November 28, 2016, through the date of the decision. (Tr. 27).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If a claimant finds no relief during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v.*

4

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Legal Standards – Eligibility for SSI Childhood Disability Benefits</u>

A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(I). To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three-step sequential evaluation process:

> 1. A child will be found "not disabled" if he engages in substantial gainful activity.
>
> 2. A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.
>
> 3. A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416. 924(a)-(d).

To determine whether a child's impairment functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment. 20 C.F.R. § 416.926a(a). The SSA will consider how a child functions in six domains:

> 1.    Acquiring and using information;

2.      Attending and completing tasks;

3.      Interacting and relating with others;

4.      Moving about and manipulating objects;

5.      Caring for yourself; and

6.      Health and physical-being.

20 C.F.R. § 416.926a(b)(1).  If a child's impairments result in "marked" limitations

in two domains, or an "extreme" limitation in one domain,[2] the impairment

functionally equals the listing and the child will be found disabled.  20 C.F.R.

§ 416.926a(d).

    C.      <u>Analysis and Conclusions</u>

        1.      Listing 112.05

   Plaintiff contends that the ALJ's determination that D.A. does not meet or

medically equal Listing 112.05 is not supported by substantial evidence.  Listing

112.05 provides:

> 112.05 Intellectual disorder (see 112.00B4), for children
> age 3 to attainment of age 18, satisfied by A or B:
>
> A. Satisfied by 1 and 2 (see 112.00H):
>
> 1. Significantly subaverage general intellectual
> functioning evident in your cognitive inability to

---

[2] A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).

function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence.

OR

B. Satisfied by 1 and 2 (see 112.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 112.00E1); or

b. Interact with others (see 112.00E2); or

c. Concentrate, persist, or maintain pace (see 112.00E3); or

d. Adapt or manage oneself (see 112.00E4).

Plaintiff argues that the ALJ's reason for discrediting D.A.'s full scale IQ test score of 59 actually supports him meeting Listing 112.05(A).  Listing 112.05(A)(1) requires significant subaverage intellectual functioning evident in the cognitive inability to participate in standardized testing of intellectual functioning. The ALJ discredits D.A.'s IQ by stating he had difficulty engaging in formal intelligence quotient testing.  (Tr. 18).  According to plaintiff, this statement by the ALJ on its face supports D.A.'s meeting 112.05(A).  Plaintiff complains that the ALJ briefly analyzed the "paragraph B" section of the listing without addressing subsection 2 of Listing 112.05(A).[3]  Plaintiff maintains that D.A. has significant deficits in adaptive functioning evidenced in school records showing that D.A. appears to be delayed in completing basic self-help skills because he requires help to complete any basic task.  (Tr. 251).  Accordingly, plaintiff contends that D.A. meets Listing 112.05(A).

In response, the Commissioner points out that the ALJ expressly considered Listing 112.05 and pointed to evidence that D.A. participated in standardized testing of intellectual functioning, although his provider noted that his low score of 59 might be an underestimate due to his shyness.  (Tr. 18, 244-45). According to the Commissioner, the provider's indication that D.A.'s low test score might

_____

[3]  Plaintiff does not argue that D.A. satisfies Listing 112.05(B) and thus, this will be discussed no further.

reflect a shy and reserved nature is not the same as evidence that he lacks the
cognitive ability to participate in testing as contemplated by Listing 112.05(A)(1).
The Commissioner argues that the ALJ's discussion of the relevant evidence in the
hearing decision also showed that D.A. was not dependent on others for personal
needs in an age-inappropriate manner, which is required to meet Listing
112.05(A)(2). (Tr. 18, 26). Specifically, the ALJ pointed to evidence that D.A.'s
kindergarten teacher, Ms. Snyder, reported that he had no problem in caring for his
physical needs such as dressing and eating, except for some fine motor skill issues
with unbuttoning his pants. (Tr. 26, 224). The Commissioner also suggests that
plaintiff cannot undermine the ALJ's analysis merely by pointing to other evidence
in the record that could support a different result.

The Commissioner also points out that the ALJ gave significant weight to
the opinions of the State agency experts Ms. Schneider, Dr. Tareen, and Dr.
Venema, who expressly considered Listing 112.05 and opined that D.A. did not
meet, medically equal, or functionally equal that or any other listing. (Tr. 23, 61-
64); *see Blaine v. Astrue*, 2010 WL 3291825, at *3-4 (E.D. Va. Aug. 18, 2010),
rep. & rec. adopted, 2010 WL 3291825 (E.D. Va. Aug. 18, 2010) (affirming
magistrate's decision upholding ALJ's finding that plaintiff did not meet or
medically equal Listing 112.11 based on opinion of a Disability Determination
Services doctor); *Reeves v. Comm'r of Soc. Sec*., 618 Fed. Appx. 267, 274 (6th Cir.

2015) ("[A]n ALJ is permitted to rely on state agency physician's opinions to the same extent as she may rely on opinions from other sources.").

The Commissioner persuasively argues that the ALJ's Listing analysis is fully supported by the state agency expert opinions and other evidence in the record. The ALJ supported his conclusion by citing to those opinions and referring to record evidence from Ms. Snyder showing that D.A.'s dependence on others for personal needs does not exceed what is age-appropriate. Even if substantial evidence exists suggesting otherwise, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545). Plaintiff's evidence is insufficient to detract from the substantial evidence that he ALJ cited in support of the decision. Here, the ALJ's decision falls well within the zone of choice and there is no basis to disturb that decision.

2.    Functional Equivalence

 Plaintiff also argues that the ALJ's assessment of whether the claimant's impairments functionally equaled an impairment in the Listings, as assessed under the six domains found in 20 C.F.R. § 416.926a(a), is in error.  Because the ALJ found D.A. to have marked limitations in one domain, plaintiff must show that the ALJ's decision that D.A. did not suffer from at least marked limitations in any one of the other domains is not supported by substantial evidence, or that the ALJ's decision that D.A. did not suffer from extreme limitations in even one of the six domains is not supported by the substantial evidence.  Here, plaintiff only objects to the ALJ's decision regarding one of the six domains: interacting with and relating to others.

The domain of interacting and relating with others considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  20 C.F.R. § 416.926a provides guidance, by age group, on how children should be functioning in this domain:

> (iii) Preschool children (age 3 to attainment of age 6). At this age, you should be able to socialize with children as well as adults. You should begin to prefer playmates your own age and start to develop friendships with children who are your age. You should be able to use words instead of actions to express yourself, and also be better

able to share, show affection, and offer to help. You should be able to relate to caregivers with increasing independence, choose your own friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. You should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what you say most of the time.

(iv) School-age children (age 6 to attainment of age 12). When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a also provides examples of limited functioning in this

domain:

(3) Examples of limited functioning in interacting and relating with others. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You do not reach out to be picked up and held by your caregiver.
(ii) You have no close friends, or your friends are all older or younger than you.
(iii) You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.
(iv) You have difficulty playing games or sports with rules.
(v) You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.
(vi) You have difficulty speaking intelligibly or with adequate fluency.

The ALJ analyzed this domain as follows:

The claimant has a less than marked limitation in interacting and relating with others.  The State Agency made this determination in Ex. B-2A, and I find that that determination is consistent with the record, and I give significant weight to that determination.  In Exhibit B-l 5E, Ms. Snyder reported only a few serious or very serious problems in this domain.  She noted that there is only an obvious problem using language appropriate to the situation and listener and in taking turns in a conversation.  She further reported only a slight problem interpreting meaning of facial expression and sarcasm and body language, and no problem respecting adults in authority, following rules, asking permission appropriately, expressing anger appropriately, making and keeping friends, and playing cooperatively with other children.  Exhibit B-14E states that the claimant is cooperative and wants to learn. It also states that he is "delightful." Ms. Czarnecki reported that there is no significant emotional or behavioral problem other than being timid and shy.  Exhibit B-5F does state that the claimant is not interactive but that there are no

significant behavioral concerns.  Exhibit B-2F indicates
that the claimant is friendly, polite, and cooperative and
that there is appropriate eye contact and affect.  Mr.
Andujar testified that the claimant does not socialize
much at school.

(Tr. 23-24).  Plaintiff argues that the ALJ's conclusions are based on isolated

incidents in the record and that she failed to consider evidence that showed a

marked limitation in the domain.  (Tr. 23-24).  Specifically, during the May 28,

2016 consultative examination, Ms. Czarnecki noted that D.A.'s speech was very

impaired, and he rarely spoke in sentences longer than two or three words.  (Tr.

243).  Plaintiff also points out that D.A.'s verbal IQ was 64.  (Tr. 245).  Records

from Detroit Public Schools noted that D.A. had significant communication delays

and his poor interpersonal skills affected his academic performance.  (Tr. 255).

His teacher reported that D.A. has poor social skills in that he refuses to interact

with peers, displays isolative behaviors, and communication deficits.  (Tr. 252).

According to plaintiff, this evidence shows that D.A. is not at the typical

functioning level of preschool children as he does not socialize with other children

and does not develop friendships with other kids, and  the ALJ did not consider

these findings in her decision.  Plaintiff maintains that the ALJ's determination

cannot be supported by substantial evidence because she did not consider these

findings.  Plaintiff also argues that if a 5-year-old can only speak two or three

words at a time, the child likely has a marked impairment in interacting and relating with others.

In the view of the undersigned, the ALJ's assessment of this domain is supported by substantial evidence, as thoroughly outlined by the Commissioner.  In making her findings on this domain, the ALJ gave significant weight to the June 2016 opinions of three State agency experts—speech language pathologist K. Schneider, MS, CCC-SLP; psychiatrist Ruqiya Tareen, M.D., and pediatrician William Venema, M.D.  (Tr. 23, 61-66).  These experts relied on the consulting examination report of Ms. Czarnecki.  *Id.*  The three state agency experts opined that D.A. had a less than marked limitation in this domain and did not functionally equal the listings.  The ALJ was entitled to rely on those findings.  *Id.  See Smith v. Comm'r of Soc. Sec. Admin.*, 564 Fed. Appx. 758, 763 (6th Cir. 2014) ("The opinions of the state agency psychologists, experts in Social Security disability evaluation, also indicate that [the child's] impairments did not functionally equal the Listings.").

The ALJ also considered the fact that the consultative examinations showed that while D.A. was shy and reserved, he was also friendly, polite, and cooperative. (Tr. 23-24, 233-40, 243-46).  When Ms. Czarnecki evaluated D.A. on May 28, 2016, she observed that while he was somewhat quiet and reserved, and needed a lot of prompting and encouragement, he did not appear to be anxious, oppositional,

or unintentionally uncooperative.  (Tr. 23, 244).  His affect was appropriate, and his mood was "a little bit shy and reserved but still pleasant."  *Id*.  She opined that there was "no evidence of significant emotional or behavior problems other than some timidity and shyness."  (Tr. 23, 245 (in treatment notes also signed by Herman J. Daldin, Ph.D.)).  The ALJ pointed out that records from D.A.'s pediatric speech and language evaluation with Linda Vermeulen, MA, CCC-SLP, that same day also showed that he was friendly, polite, cooperative, and alert, and had appropriate eye contact and affect.  (Tr. 24, 235).

Notably, while Ms. Czarnecki observed that D.A.'s speech was very difficult to understand due to mispronunciations and that his full-scale IQ was 59, she also added that it was difficult to determine whether his poor performance on the IQ test was solely due to cognitive impairments or partly because of his shyness.  (Tr. 23, 244-45).  And, while Ms. Vermeulen's speech testing identified deficits, she also noted that D.A. lived with his mother, father, and six-year old sibling, that both English and Spanish were spoken in the home, and that his mother only spoke Spanish.  (Tr. 24, 235-39).  She stated that her "[r]esults should be taken with caution as there is documented research that shows that English as a second language learners go through a 'quiet' time with reduced language expression during the time that they are learning a new language."  (Tr. 24, 240).  She added

that her prognosis for improvement to age typical performance in six months to a year was "fair to good given continue[d] academic intervention." *Id*.

The ALJ also pointed out that D.A.'s school records were consistent with the examiner's behavioral observations. (Tr. 23). His June 2016 school Social Work Service evaluation to determine eligibility for Special Education stated that he was not interactive, but that there were no significant behavioral concerns. (Tr. 23, 253). The ALJ also pointed to D.A.'s October 2016 Individualized Education Program, which reflected that he was happy, enjoyed school, was cooperative, wanted to learn, was "delightful," and worked well in small groups. (Tr. 23, 205-206). Further, the ALJ referred to the March 2017 Teacher Questionnaire completed by D.A.'s kindergarten teacher, Sarah Snyder. (Tr. 23, 219-26). Ms. Snyder expressly addressed the domain of interacting and relating with others and reported that D.A. only had serious or very serious problems in a few areas of this domain; specifically, in the three areas of relating experiences and telling stories, introducing and maintaining conversation, and using adequate vocabulary and grammar. (Tr. 23, 222-23). She reported an obvious problem in using appropriate language and taking turns in conversation. (Tr. 23, 222). But she opined that he only had a slight problem in interpreting meaning of facial expression, body language, hints, or sarcasm. (Tr. 23, 222). And she observed that he had no problem in the following seven areas: playing cooperatively with other children,

making and keeping friends, seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules, and respecting/obeying adults in authority. (Tr. 23, 222). She added that it had not been necessary to implement behavior modification strategies for him. *Id*. Finally, the ALJ acknowledged plaintiff's testimony at the May 2017 hearing that D.A. is fine socially at home but does not socialize much at school. (Tr. 24, 41-42).

Based on the foregoing evidence, the undersigned agrees with the Commissioner that the ALJ's finding that D.A. was not markedly limited in this domain was supported by substantial evidence. Again, because substantial evidence supports the ALJ's finding, plaintiff's citation to other evidence in the record, even substantial evidence, to support the opposite conclusion is not sufficient for the Court to find reversible error. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (The ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 15, 2019                     s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge